In re SCHALLENBERGER.

(Circuit Court, N. D. California. December 9, 1895.)

1. TARIFF LAWS—CONSTRUCTION—GENERAL PURPOSES.
   The general purpose of the so-called "McKinley Tariff Law" of October 1, 1890, to protect and foster American industries, is not to override a plain provision contained therein, which, in a particular instance, fails to carry out such purpose, or operates in contravention of it. The particular intent must prevail over the general intent.

2. SAME—REIMPORTATION OF AMERICAN GOODS—ALLOWANCE OF DRAWBACK.
   In paragraph 493 of the act of 1890, providing for the free reimportation of certain American goods, among which are casks, bags, etc., the proviso that "this paragraph shall not apply to any article upon which an allowance of drawback has been made, the re-importation of which is hereby prohibited except upon payment of duties equal to the drawbacks allowed," applies to bags of jute burlap upon which drawbacks were allowed, notwithstanding that they are reimported filled with nondutiable merchandise, such as canary seed.

This was an appeal by L. E. Schallenberger from a decision of the board of general appraisers affirming the action of the collector of the port of San Francisco in assessing a duty on certain reimported American bags upon which a drawback had been allowed.

Fox, Kellogg & Gray, for importers.
Samuel Knight, Asst. U. S. Atty.

McKENNA, Circuit Judge (orally). The appellant made two importations of canary seed into the port of San Francisco, Cal., the seed being inclosed in double bags. The outer coverings of the seed

were certain returned bags, upon which an allowance of drawback had been made on their exportation, for the reason that they were jute burlaps, dutiable at 1⅜ cents per pound, under paragraph 364, Act 1890. They were assessed for duty, under paragraph 493, at an amount equal to the drawbacks allowed, less 1 per cent. thereof, by the collector, under instructions of the secretary of the treasury, and this ruling was affirmed by the board of general appraisers. The object of the appeal to this court is to review the decision of the board of general appraisers. Before the board of appraisers no proof was made that the bags were the ordinary and usual commercial coverings of canary seed. The omission, however, does not appear to have determined the decision of the board. In this court, on a reference for that purpose, testimony has been taken which, it is admitted, shows that the double covering was usual, and suitable for the transportation of the seed. The controversy turns upon the strict application of paragraph 493, which is as follows:

"Articles the growth, produce, and manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means; casks, barrels, carboys, bags, and other vessels of American manufacture exported filled with American products, or exported empty and returned filled with foreign products, including shooks when returned as barrels or boxes; also quicksilver flasks or bottles, of either domestic or foreign manufacture, which shall have been actually exported from the United States; but proof of the identity of such articles shall be made, under general regulations to be prescribed by the secretary of the treasury: and if any such articles are subject to internal tax at the time of exportation such tax shall be proved to have been paid before exportation and not refunded: provided, that this paragraph shall not apply to any article upon which an allowance of drawback has been made, the re-importation of which is hereby prohibited except upon payment of duties equal to the drawbacks allowed; or to any article manufactured in bonded-warehouse and exported under any provision of law: and provided further, that when manufactured tobacco which has been exported without payment of internal revenue tax shall be re-imported, it shall be retained in the custody of the collector of customs until internal revenue stamps in payment of the legal duties shall be placed thereon."

It is admitted by the district attorney that generally free goods make free coverings, but he claims that this does not apply to goods described in paragraph 493, the explicit language of which requires the imposition of a duty equal to the drawbacks which had been allowed. Appellant asserts contra:

"That neither the first proviso of nor anything contained in the said paragraph 493 has any application to this matter: (1) Because this proviso can only operate as a limitation upon the exemption from duty (if any there be already laid affecting a given case) afforded by the preceding portion of the paragraph, and cannot operate as a limitation upon exemption from duty afforded by reason of other and additional facts; or, in other words, this proviso is a subsidiary part of a paragraph, and the paragraph, taken altogether, including the proviso, and after giving the utmost force and effect that (under the true rules of construction is possible) can be given to the proviso, does not create a duty or obligation, but only gives an exemption if such duty or obligation already exists. (2) Because, even if the principle contended for under (1) is not sound, and even if it be true that the first proviso of this paragraph is to be taken as laying a duty, instead of merely limiting the extent of an exemption from such duty as in a given case,

may be applicable by reason of other provisions of the tariff act, still the rule that free goods bring in free their ordinary, usual, and commercial coverings is not modified or affected by this proviso."

Any other interpretation, counsel urges, and strongly urges, militates against the policy of the act and the purpose of drawback, both of which, it is claimed, are encouragement to American industries, and will present the anomaly of bags made of foreign materials by foreign labor being admitted free as coverings, while bags made of foreign materials, by American labor, used for like purpose, are charged a duty. It may be admitted that one of the purposes of the McKinley act was protection to American industries, and that it sought to accomplish this purpose, both by duties upon imports and the allowance of drawbacks upon exports; but, considering the many things a tariff law must accommodate, it is not strange that a rigid, logical application of principle should not be made, and, because not made, it does not follow that plain provisions should be disregarded. The purpose of an act is, undoubtedly, the light by which its provisions are to be construed, but we may not assume that any provision is idle. It may be an exception to the general purpose, and the first presumption is that it means something. A particular intent will prevail over a general intent. Section 2 of the act provides as follows:

"On and after the 6th day of October, 1890, unless otherwise specially provided for in this act, the following articles when imported shall be exempt from duty: * * * 493. * * * Casks, barrels, carboys, bags, and other vessels of American manufacture exported filled with American products, or exported empty and returned filled with foreign products. * * * Provided, that this paragraph shall not apply to any article upon which an allowance of drawback has been made, the re-importation of which is hereby prohibited except upon payment of duties equal to the drawbacks allowed. * * *"

The appellant's bags are within the description of the paragraph. They were exported, and have been returned filled with foreign products. They also fulfill the condition of the proviso. An allowance of drawback had been made to them, and the prohibition of the proviso applies, unless it is prevented by other facts. The fact which it is claimed prevents it is that the bags are coverings for free goods, which are exempt by law as well as the goods. There is no explicit provision of law which declares that free goods make free coverings. If true at all, it is only as an inference from section 19 of the administrative act of 1890, which, after providing that the duty of imported merchandise subject to an ad valorem duty shall include the value of all cartons, cases, crates, boxes, sacks, and coverings of any kind, provides that, "if there be used for covering or holding imported merchandise whether dutiable, or free, any unusual article or form designated for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duty shall be levied and collected upon such material or article at the rate to which the same would be subject if separately imported." It may be inferred from this that usual coverings are exempt from duty. Granting the inference, and if we construe the provision as universal, is there anything for paragraph 493 to operate on, as far as casks,

barrels, carboys, and sacks are concerned? If returned filled with foreign products, it must be as coverings suitable for such products. It would seem, therefore, this exemption from duty was unnecessary, as this was already done by section 19 of the administrative law; that is, a law of which free coverings on free goods is but a part, and that the only substantial part of paragraph 493 is the proviso which not only limits the exemption, but prohibits importation, except upon payment of duties equal to the drawback which had been allowed. This is not necessarily repugnant to the purposes of the act; but, if it is, it was competent for congress to make an arbitrary exception, and, if it intended to do so, it is not clear how language more apt to accomplish it could have been employed. The proviso contains another example of the same kind. It exempts from privilege of return or reimportation without duty articles manufactured in bonded warehouses, and exported under any provision of the law. The exception is more complete than in the case of sacks. On the latter the duty is fixed at the amount of drawback allowed. No duty, therefore, is put on the value given by American labor. On the former—that is, on articles manufactured in bonded warehouses—the duty shall be the same rate as if originally imported. Section 22. A duty, therefore, is put on the value given by American labor. This is a more repugnant exception to the general policy of the act than that of which appellant complains. The usual purpose of a proviso is to limit that which precedes it, but it may do more, and, however the intention of the lawmaker is expressed, it must prevail. If the proviso to paragraph 493 stopped with exempting from it articles upon which an allowance of drawback had been made, there would have been some reason for claiming it a limitation merely; but it goes further, and says "the reimportation of which is hereby prohibited, except upon payment of duties equal to the drawbacks allowed." Language could not well be clearer or more positive. It forms a class of articles of those upon which drawbacks had been allowed. Thus construed, the paragraph and proviso have an intelligent purpose.

Appellant, in support of his claim, makes a distinction between the word "returned," in the body of the paragraph, and the word "reimportation," in the proviso. It is manifest, however, to accomplish the purpose of the paragraph, that they must be construed as having the same meaning. It follows from these views that the decision of the board of appraisers must be, and it is, affirmed.